NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| LORRAINE C. EAST, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | CAUSE NO. 2:14cv058 PPS JEM |
| vs. | ) | |
| | ) | |
| LAKE COUNTY SHERIFF DEPT., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before me is the Defendants' motion to dismiss Plaintiff Lorraine C. East's amended complaint. (DE 75.) East's original complaint was against a number of parties alleging, among other convoluted claims, an unspecified violation of her constitutional rights. (DE 52 at 8.) Based on a variety of problems with the original complaint, I granted her motion to file an amended complaint, which she did. (DE 52.)

East brings suit against the Indiana Department of Child Services (DCS); DCS employees Mary Beth Bonaventura, Richard L. Bano, Randall Henderson, Tina Kozlowski, Melanie Cox, Denise Cox, Denise M. Crook, and Jane Bisbee ("DCS Caseworkers"); Magistrate Judge Glenn Commons; the Lake County Sheriff's Department; Lake County Sheriff John Buncich; Deputy Sheriff Bosse, Officer Cooper, Officer J.S. Corle, Officer R. Fay, Officer Parker, Officer Trajkovich ("Sheriff's Deputies"); and her ex-husband William Miller. To her handwritten complaint, East attaches lengthy exhibits, many of which are heavily edited by East, include DCS reports, Child Protective Services reports, and disaster relief information from the Federal Emergency Management Authority (FEMA). (DE 52.)

Like her initial complaint, East's amended complaint is difficult to follow and sometimes illegible.

To the extent that I can make out East's claims, at no point does she state a plausible claim to relief capable of clearing the bar set by Rule 12(b)(6). East's claims fail on both procedural and jurisdictional grounds, each of which I will detail below. I will therefore grant Defendants' motion to dismiss.

### BACKGROUND

East provides a lot of information within her handwritten, amended complaint and 385 pages of exhibits. (See DE 1, DE 52.) Because the complaint is so difficult to follow, it is often hard to develop a clear picture of the events in question, and sometimes impossible to parse out what claim she is actually attempting to state. But at bottom, this case concerns an Indiana state court's decision to terminate her parental rights. (DE 52 at 1.)

In 2012 Magistrate Judge Commons entered an order modifying East's custody of her child.[1] (DE 52 at 1, 8.) Judge Commons granted full custody of East's child to her ex-husband. (DE 54 at 5.) East sues Judge Commons because she believes something fundamentally unfair occurred during the 2012 custody proceeding. (DE 52 at 8.) East alleges that Judge Commons "terminated [her] parental" rights without any prior notice and refused to listen to the facts of her case. East claims Magistrate Commons "judged [her] before [she] even enter [*sic*] the courtroom," making her look "like a [*sic*] unfit bad

---

[1] At different points in the complaint, East also refers to a Judge Cherry. She does not file suit against him and it appears that he is referenced only as having been assigned to one or more of her previous cases in federal court.

criminal looking mother." (DE 52 at 1.) East argues that Judge Commons' bias and failure to provide notice constituted a "misconduct of powers and a misuse of the law" (DE 52 at 13.) It appears East sues Judge Commons for violating her procedural and substantive due process rights at the custody hearing, though she never specifically advances a Fourteenth Amendment claim. (DE 52 at 1, 8.)

East claims she is within her rights to bring this suit in federal court because "this is the same federal court and the same two parties (Lake County Sheriff Dept. and CPS)" in a case that was "heard in Judge Cherry's courtroom." (DE 52 at 6.) I cannot be sure, but I think East is referencing a separate suit against Magistrate Judge Hallett that Judge Cherry was previously assigned to before the case was consolidated with this case. (*See* Case. No. 2:14cv268, DE's 3-4.) That case was previously dismissed. (*Id.* at DE 5.)

East also brings suit against DCS and the DCS Caseworkers for "doing this same type of charging me [*sic*] with the exact same thing they are trying to charge me with now." (DE 52 at 4.) East's elliptical allegation appears to refer to two separate DCS investigations into East's treatment of her child. (DE 52 at 3.) As best as I can tell, in 2004 a DCS case worker found no basis to support an anonymous allegation that East abused and neglected her child. (DE 52 at 4-5.) However, sometime in 2008, DCS conducted another investigation and at that time, DCS found her "dangerous" and "unfit." (DE 52 at 14.) Sometime thereafter, acting pursuant to a court order issued by Judge Commons, DCS removed East's child from the home and placed her with her husband. (*See* DE 52 at

8.) East claims that DCS made a mistake of grave constitutional error in the 2008 investigation, wondering "how could I suddenly become a bad parent now." (DE 52 at 4.)

East claims that DCS "discriminated against me and retaliated against me in the delivery of services based on my race." (DE 52 at 11.) She also claims DCS neglected their duties, "failed to serve and protect," and "made all of our lives a living hell." (DE 52 at 12.) As best I can discern from the variety of allegations East advances, East appears to allege violations of her Fourteenth Amendment due process and equal protection rights caused by the removal of her child.

East also brings suit against individual DCS caseworkers. East claims the caseworkers knowingly placed her child in an abusive environment. (DE 52 at 8.) East alleges that her ex-husband, Miller, abuses their child and "the entire CPS[2] team was aware—never did anything." (*Id.* at 9) She claims the caseworkers "allowed this man to fight/beat my daughter [illegible] while under the influence of drugs/alcohol." (*Id.*) According to East, when she attempted to bring this information to DCS, "CPS kept saying I did not except [*sic*] services" and eventually called her "crazy." (DE 52 at 10.) As best as I can tell, East sues the DCS caseworkers for violating her substantive due process right to provide for and raise her child, though she never explicitly pleads a Fourteenth Amendment violation.

East brings suit against the Lake County Sheriff's Department, the Lake County Sheriff and the Sheriff's Deputies because she is convinced they retaliated against her for

---
[2] East's complaint repeatedly uses the acronym CPS. I assume she is using "CPS" as referring to Child Protective Services instead of its correct acronym, DCS, or the Indiana Department of Child Services.

a past discrimination suit she filed against them. (DE 52 at 10-11.)  Evidently, East once worked as a "death investigator" for the Lake County Sheriff. (DE 52 at 7.) In 2008, East claims she reached a settlement with the Lake County Sheriff in an employment discrimination action she initiated. (DE 52 at 10-11.) As part of the settlement, East claims the two agencies had to conduct "diversity training/classes" for all employees. (DE 52 at 11.) East believes DCS, the Sheriff, and the individual Sheriff's Deputies removed her child as an act of revenge for winning that discrimination suit and forcing all employees to attend diversity training. (DE 52 at 10-11.)

Further, she seems to allege that at some point DCS, the Lake County Sheriff's Department, the Lake County Sheriff, and the Sheriff's Deputies each discriminated against her on the basis of her race, thereby violating her right to equal protection of the law under the Fourteenth Amendment. (DE 52 at 11-12.) I will construed this as a Section 1983 claim.

Finally, East sues her ex-husband, William Miller, alleging that he physically abused her and their child. (See DE 52 at 9.) East argues that her husband does not provide a stable living environment for their child. (DE 52 at 9)  East claims her husband abuses their child while under the influence of drugs and alcohol. (*Id*.) She also sues him because he "manipulate[s] the system" to defame East's character and good name. (*Id*.)  East's suit against her husband appears to be connected to her desire to have the Order Modifying Custody corrected or set aside. (DE 52 at 12-13.)  According to the complaint and the

executed summons, East and her husband are both Indiana residents. (DE 52-1 at 3, DE 4, DE 8.)

Adding a final element of complication, East is vexingly unclear on the type of relief sought. (*See* DE 52 at 13.) East does not appear to seek monetary damages from any of the defendants. Instead, East apparently wants me to amend or vacate the custody order entered by Judge Commons. (*Id.*) While she also advances claims consistent with violations of her due process and equal protection rights against various defendants, the heart of the matter seems to be East's desire to regain custody of her child.

## Discussion

To survive a motion to dismiss filed under Rule 12(b)(6), a complaint must contain enough factual matter, taken as true, to state a facially plausible claim to relief. *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a complaint at this stage, I must accept all the complaint's allegations as true and draw all reasonable inferences in the complainant's favor. *Twombly,* 550 U.S. at 570. However, I don't need to assume the truth of any conclusory legal statements not supported by the facts as pleaded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that merely tenders "naked assertion[s]" without any "further factual enhancement" cannot survive a motion to dismiss. *Twombly,* 550 at 555. I also keep in mind that " [a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

When considering a motion to dismiss, I begin by stripping any conclusory legal statements from the complaint. *Iqbal*, 556 U.S. at 679. Provided the remaining well-pleaded facts allow me to reasonably infer that the defendant is liable for the misconduct alleged, the complaint meets the plausibility standard. *Id*. When evaluating whether the complaint states a plausible claim to relief, I must rely on judicial experience and common sense. *Id*. at 679. While Rule 8 does not require hyper-technical pleadings, it also does not unlock the "doors of discovery for a plaintiff armed with nothing more than threadbare legal conclusions." *Id*. at 678-79.

I.  **East Cannot Obtain the Relief She Requests.**

*The Domestic Relations Exception to Federal Jurisdiction Bars East's Claims Related to the Return of Her Child.*

As outlined above, it appears East wants me to throw out the Order Modifying Custody and return her child to her. Due to the domestic relations exception, I am barred from considering any of East's claims as they relate to the Order Modifying Custody. The Supreme Court has long recognized a domestic relations exception to federal subject matter jurisdiction. *See Barber v. Barber*, 62 U.S. (21 How.) 582, 584 (1859); *Ankenbrandt v. Richards*, 504 U.S. 689, 694-95 (1992) (reaffirming the exception); *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12-13 (2004) (recognizing the exception's continued relevance), *abrogated on other grounds*. In major part, the domestic relations exception

divests the federal courts of any power to issue or amend divorce, alimony, or child custody decrees. *Ankenbrandt,* 504 U.S. at 703. The exception stems from the federal court's strong deference to the states in the area of family law. *Newdow*, 542 U.S. at 13. It likewise recognizes that state courts have developed a proficiency with the substantive and procedural issues germane to domestic matters. *Struck v. Cook County Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007). Therefore, to the extent that any of East's claims asks me to amend or vacate the Order Modifying Custody, I am barred from considering any of them.

However, the domestic relations exception likely does not address East's claims against her ex-husband, Miller. The exception does not apply when one parent files a tort action against the other parent on behalf of the child. *Ankenbrandt,* 504 U.S. at 703. Conceivably, because East alleges that Miller abuses the couple's child, the domestic relations exception does not bar her claims against Miller, if she is, in fact, attempting to sue him for abusing her child (which is not at all clear).

Regardless, East's suit against Miller fails for lack of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). While I recognize that Miller, also *pro se* in this matter, has not joined the defendants' motion to dismiss, I must diligently police my jurisdictional limits, and have the ability to do so *sua sponte*. *Joyce v. Joyce,* 975 F. 2d 379, 386 (7th Cir. 1992). Since East doesn't allege her husband violated any federal law, to bring suit against her husband in federal court, East must allege the matter is between citizens of different states. 28 U.S.C. § 1332(a). East has the burden of showing complete diversity of all parties.

*Id.* In this case, East served Miller in Indiana, and does not allege that her husband lives outside the state. Assuming as true the fact that both East and her husband live in Indiana, East's suit against Miller does not meet the requirements of § 1332. *Id*. Therefore, even though Miller does not join this motion, I dismiss East's claims against him for lack of jurisdiction. Also, because all other claims are being dismissed in this Opinion, I will relinquish supplemental jurisdiction over any state law claim East may have against her former husband.

*Rooker-Feldman precludes any of East's remaining claims pertaining to her custody arrangement.*

To the extent that East alleges any other injury specifically caused by the Order Modifying Custody, the *Rooker-Feldman* doctrine bars me from considering those claims. As I mentioned, East believes the state court reached the wrong decision when it awarded custody to her husband in 2012. However, East's complaint is confusingly unclear on the injuries suffered and relief sought. It is clear that prior to filing her federal complaint in 2014, East did not pursue an appeal through the Indiana state court system, the proper venue for appealing a custody decision. *See e.g. Hamiter v. Torrence*, 717 N.E.2d 1249, 1252 (Ind. Ct. App. 1999).

At its elemental level, *Rooker-Feldman* prevents me from altering the work of completed state court decisions. *Lance v. Dennis*, 546 U.S. 459, 463 (2006). The doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 236 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and holds that if a plaintiff's alleged injury

results from a state court's final decision, then I lack jurisdiction to hear the claim. *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 733 (7th Cir. 2014).

Importantly for East, the *Rooker-Feldman* doctrine is not concerned with why a state court's decision might be mistaken, but with which federal court has the authority to intervene. *Iqbal v. Patel*, 780 F.3d 728, 729 (7th Cir. 2015). No matter how mistaken a plaintiff believes a state court's judgment to be, *Rooker-Feldman* prevents me from reviewing that judgment. *Id*. To bring her claim in federal court, East must first exhaust her options within the state appellate system, and then direct an appeal to the United States Supreme Court. *Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 818 (7th Cir. 2010). Therefore, I am barred from hearing any of East's claims pertaining to any injury resulting from the custody proceeding.

## II. East's Claims Against DCS and Its Employees Fail

*DCS Is Not a Person for the Purposes of 42 U.S.C. § 1983.*

As I said above, I really can't tell what East is trying to claim here. But I am going to give her complaint the generous read that I must give to all *pro se* complaints. *Erikson,* 551 U.S. at 94. It's obvious that East believes something fundamentally unfair happened when DCS removed her child from her home. To the best of my understanding, considering the tenor of her complaint as a whole, I think East is essentially claiming that DCS violated her right to raise her kids. (*See* DE 52 at 4.) Such a claim would theoretically arise under 42 U.S.C. § 1983, because East would essentially be arguing that the agency violated her substantive due process right to raise her child. *See Troxel v. Granville*, 530 U.S.

57, 65 (2000); *Berman v. Young*, 291 F.3d 976, 983 (7th Cir. 2002). She also claims that the agency discriminated against her on the basis of her race. (DE 52 at 11.)

To successfully bring a claim under § 1983, East must allege a specific deprivation of her constitutional rights and establish that the party sued qualifies as a person acting under the color of state law. *Xiong v. Fischer*, 787 F.3d 389, 397 (7th Cir. 2015). However, there is no question that DCS is a branch of the State of Indiana. *See* Ind. Code § 31-25-1-1. That means that DCS is not a person as defined by § 1983 and therefore cannot be sued. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Badger Catholic, Inc. v. Walsh*, 620 F.3d 775, 781 (7th Cir. 2010); *Fairley v. Fermaint*, 482 F.3d 897, 904 (7th Cir. 2007). Because DCS is not a person, as a matter of law, East's § 1983 claims against DCS are barred. *See Id.*

Moreover, to the extent that East advances any claim against DCS outside the auspices of § 1983, the Eleventh Amendment's principle of sovereign immunity bars suits against states and their agencies regardless of the relief sought. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) *citing Cory v. White*, 457 U.S. 85, 90 (1982). For a private litigant like East to bring a federal lawsuit against a state agency, the state must consent to the suit. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *See also Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Thus, because the state has not consented to East's suit, East cannot proceed with any other claims against DCS and DCS is dismissed as a party.

Just because she can't sue DCS, that is not to say that East cannot sue state officers in their individual capacities. For example, the *Young* exception to sovereign immunity recognizes that a plaintiff may proceed with "certain suits seeking declaratory and injunctive receive against state officers in their individual capacities." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997), *citing Ex parte Young*, 209 U.S. 123 (1908). So to the extent that East seeks injunctive relief against individual DCS employees, she may, in theory, have a claim. But for the reasons discussed immediately below, that's not the case.

*East's Claims Against DCS Caseworkers Individually Are Barred*

East's complaint also names the DCS caseworkers as defendants in their individual capacities. Giving her complaint a fair reading, as I'm required to do pursuant to *Erikson*, East seems to allege that when the caseworkers removed East's daughter pursuant to a court order the caseworkers violated her substantive due process right to raise her child. In their motion to dismiss, DCS caseworkers argue that qualified immunity protects them from suit.

Although East is not barred under the Eleventh Amendment from bringing this claim (*see above*), in cases involving the removal of children from potentially abusive situations, the Seventh Circuit has made clear that "social workers and other state actors who cause a child's removal are entitled to qualified immunity because the alleged constitutional violation will rarely—if ever—be clearly established." *Brokaw v. Mercer County*, 235 F.3d 1000, 1023 (7th Cir. 2000). The Seventh Circuit's reasoning stems from the

fact that "the balance between a child's liberty interest in familial relations and a state's interest in protecting the child is nebulous at best." *Id.* Apropos to the facts as pleaded here, the Seventh Circuit has established that generally speaking, a caseworker does not violate a parent's substantive due process rights by removing a child pursuant to a court order. *Id.* at 1019, 10243 (citing *Miller v. City of Philadelphia*, 174 F.3d 368, 373 (3d Cir. 1999)); *see also Doe v. Heck*, 327 F.3d 492, 514-15 (7th Cir. 2003). Moreover, the Seventh Circuit has previously granted qualified immunity to individual caseworkers in situations far more extreme than the situation described by East's complaint. *See Doe v. Heck*, 327 F.3d 492, 515 (7th Cir. 2003) (because warrantless seizure of children from school not a violation of clearly established rights, child welfare caseworkers are entitled to qualified immunity on parents' Fourteenth Amendment claim).

Based on the facts as set out in East's complaint, the DCS caseworkers did not violate her substantive due process rights when they removed East's child pursuant to a court order. Therefore, Qualified immunity shields the DCS caseworkers from East's suit. I therefore grant the DCS caseworkers' motion to dismiss.

### III. Judicial Immunity Bars East's Suit Against Magistrate Commons.

East also files suit against Magistrate Judge Commons alleging violations of her procedural due process rights. (DE 52 at 1.) East claims Judge Commons issued the Order Modifying Custody without conducting a hearing and without listening to the facts of her case. (*Id.*) In total, East believes Judge Commons' actions amount to "misconduct of powers and misuse of the law." (DE 52 at 13.)

However, it is long-settled law that judges acting within their jurisdiction and in their judicial capacity are immune from civil suit. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, **14 (1871); *Stump v. Starkman*, 435 U.S. 349, 355-57 (1978); *Anderson v. Anderson*, 554 Fed. Appx. 529, 531 (7th Cir. 2014). Judicial immunity holds even where, in the exercise of his authority, a judge makes serious procedural errors. *John v. Barron*, 897 F.2d 1387, 1391 (7th Cir. 1990) (citing *Stump*, 435 U.S. at 359).

East's allegations against Judge Common fail for two reasons. First, East's complaint does not provide the requisite factual basis for her conclusory allegation that Judge Commons committed a "misconduct of powers." (DE 52 at 13.) East's allegations against Judge Commons are exactly the kind of threadbare legal conclusions that do not warrant the presumption of truth in a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. Consistent with my judicial experience and common sense, I may strike them from the complaint. *Id*.

Second, even if I were to accept her threadbare allegations as true for the purposes of this motion, it is apparent that Judge Commons entered the Order Modifying Custody as part of his judicial capacity, and acted within his jurisdiction in doing so. Judge Commons is thus immune from suit because his actions were judicial in nature. *Anderson*, 554 Fed. Appx. at 531. Essentially, East alleges that Judge Commons should not have awarded custody to Miller. But, adverse rulings alone do not equate to wrongdoing *Id*. Therefore, Judge Commons is entitled to judicial immunity, and the case against him will therefore be dismissed.

## IV. East's Claims Against the Lake County Sheriff and Sheriff's Deputies Also Fail.

East seems to claim that the Lake County Sheriff and the Sheriff's Deputies, acting in their official capacity under state law, violated her equal protection rights when they removed East's child pursuant to a court order. (DE 52 at 11.) Specifically, East believes the Sheriff and his deputies removed her child as an act of retaliation against her. (*Id.*) Importantly, though the Sheriff and the Sheriff's Deputies do not join this Motion to Dismiss, I may *sua sponte* dismiss the claims against them "if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff had an adequate opportunity to argue in opposition to the motion." *Malak v. Associated Phys., Inc.*, 784 F.2d 277, 280 (7th Cir. 1986). That is certainly the case here.

Addressing the claims against the individual Sheriff's Deputies first, they are entitled to quasi-judicial immunity because the complained-of action is merely the execution of a court order. *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238-39 (7th Cir. 1986). Importantly, East does not allege that the Sheriff's Deputies did anything above and beyond execute the Order Modifying Custody issued by Judge Commons (for example, she does not allege excessive force). Nor does the fact that the Sheriff's Deputies removed East's child warrant a change in result. As made clear above, state actors who cause a child's removal pursuant to a court order are entitled to qualified immunity. *Brokaw*, 235 F.3d at 1019. Thus, East's § 1983 claims against the Sheriff's Deputies must fail.

As to East's claims against Sheriff Buncich, the Seventh Circuit has made clear that supervisory liability does not exist under § 1983. A supervisor must be personally involved

in the misconduct of his or her subordinates in order to be held liable. *Chavez v. Illinois State Police,* 251 F.3d 612, 651 (7th Cir. 2001). In this case, East has made no allegations that Sheriff Buncich knew about the conduct, facilitated it, approved or condoned it, or turned a blind eye to the alleged misconduct. *Id*. And even if she did allege such facts, he would be entitled to the same qualified immunity discussed above. Thus, I dismiss East's claims against Sheriff Buncich.

## CONCLUSION

For the foregoing reasons, I grant DCS and the DCS caseworkers' motion to dismiss. Likewise, I dismiss East's suit against the Lake County Sheriff, the Sheriff's deputies, and East's husband. That terminates East's claims regarding all parties. I will, however, dismiss all claims **WITHOUT PREJUDICE**, in case East is somehow able to amend her claims to cure the deficiencies outlined in this order.

**SO ORDERED**.

ENTERED: September 9, 2015

s/Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT